UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

06 Civ. 13439 (RPP)
07 Civ. 00959
07 Civ. 01357
07 Civ. 02562
07 Civ. 03104
07 Civ 03180

INDEMNITY INSURANCE CO. OF NORTH AMERICA,

                              Plaintiff,

- against -

C.U. TRANSPORT, INC., et al.,

                              Defendants.

And Five Related Cases

DECLARATION OF HENRY MAK IN SUPPORT OF THE DISMISSAL MOTION OF DEFENDANTS, YANG MING MARINE TRANSPORT CORP. AND YANG MING (AMERICA CORP.)

HENRY MAK, being duly sworn, deposes and says:

1. I am the claims manager for defendant, YANG MING (AMERICA) CORPORATION ("YMAC"), a defendant in Civil Action No. 07-00959 captioned above. I am fully familiar with the facts and circumstances of the case and I make this declaration on personal knowledge in support of the dismissal motions of defendant, YANG MING (AMERICA) CORPORATION ("YMAC") and YANG MING.MARINE TRANSPORT CORP. ("YMMTC") made in all six cases.

2. YMAC is not an ocean carrier. It owns and operates no ships, it is not registered as a carrier with the Federal Maritime Commission, and it issues no bills of lading in its own name. Rather, it carries on business as the U.S. general agent for YMMTC, which is named as a defendant in each of the related actions captioned above. YMMTC is an ocean carrier in international trade, licensed by the Federal Maritime Commission, and it carries goods by sea in international trade.

3. These actions involved claims for loss and damage to cargoes which moved on the defendant vessel, EASLINE TIANJIN, from China to various U.S. ports in July of 2006. Neither YAC nor YMMTC owned or operated the EASLINE TIANJIN. YMMTC simply shared space on board that vessel along with a number of other slot charterers.

4. Although YMMTC did not own or operate the EASLINE TIANJIN, it did charter space onboard that vessel. Some of the EASLINE TIANJIN cargoes sued on were cargoes for which YMMTC had issued its standard form bill of lading. Copies of the face of each such bill of lading are attached to this declaration as YANG MING EXHIBIT A. YMAC was not involved in the issuance of any of the subject YMMTC bills of lading, each of which indicate in their lower right corner that they were issued for YMMTC by an overseas agent. *See, YANG MING EXHIBIT A.*

5. Each of the said YMMTC bills of lading had the same reverse side terms and conditions, a true and complete copy of which is attached to this declaration as YANG MING EXHIBIT B.

6. YMAC did not issue any bills of lading in respect of the cargoes sued in Civil Action No. 07-00959 and at no time did YMAC ever have possession, custody or control of those goods. As a result, the said complaint against YMAC for loss or damage to those goods should be dismissed.

7. In the alternative, since YMAC has been sued as a carrier just as YMMTC, its should have the right to the same carrier defenses as YMMTC does – including the benefit of the YMMTC bill of lading London forum clause.

WHEREFORE, the undersigned respectfully requests that the motion be granted.

Dated:     Jersey City, NJ, July 31, 2007

_____
HENRY MAK

# EXHIBIT A

Case 1:07-cv-03104-RPP    Document 31-2    Filed 07/31/2007    Page 1 of 10

# 陽明海運股份有限公司
YANG MING MARINE TRANSPORT CORP.

**ORIGINAL BILL OF LADING**

| | |
|---|---|
| **Shipper** | **Booking No.** / **S/L No.** YMLUE235003940 |
| T.H.I. GROUP LTD. TIANJIN OFFICE<br>RM1702, NO.81 TIANXING RIVERFRONT<br>SQUARE, SHIXIJING ROAD, HEDONG<br>DISTRICT, TIANJIN, CHINA. P.R.C. 300171<br>TEL:022-24310136 FAX:022-24137032 | **Export Reference**<br>AUTO-NVO/KOIT |
| **Consignee** (non-negotiable unless consigned to order)<br>KAMINO INT'L TRANSPORT INC (NEWARK)<br>635 RAMSEY AVE HILLSIDE NY<br>07205<br>TEL:908-687-3552 FAX:908-687-3345 | **Forwarding agent references**<br><br>**Point and Country of Origin of goods** |
| **Notify party**<br>SAME AS CONSIGNEE | **Also Notify** |
| *Precarried by | Place of Receipt<br>XINGANG, CHINA |
| Vessel   Voy No.   Flag | Port of Loading<br>XINGANG, CHINA |
| Port of Discharge<br>NEW YORK, NY | *Place of Delivery<br>NEW YORK, NY |

Onward Inland Routing

Delivery Status: Port

**PARTICULARS FURNISHED BY MERCHANT**

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(CBM) / Gross Weight(KGS) |
|---|---|---|---|
| N/M | 1 CTNR | SHIPPER'S LOAD AND COUNT.<br>S.T.C : 671CARTONS<br>HATS & CAPS<br>(WOOL FELT HATS)<br>***TLX RLS*** | 52.930CBM<br>1771.200KGS<br><br>FREIGHT COLLECT<br>LOADED ON M/V:<br>AT:XINGANG, CHINA<br>ON:JUL/08/06<br>CRD:JUL/05/06 |

YMLU4383961 40'DC FCL/FCL 7734854 671CARTONS 1771.20KGS 52.930CBM

Place and Date of Issue: XINGANG  JUL/08/06
On Board Date: JUL/08/06

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| 636866 | OF | 1.000 | C4D | USD 3250.00 | | 3250.00 | YMLUE235003940 |
| | PE | 1.000 | C4D | USD 300.00 | | 300.00 | |
| | PU | 1.000 | C4D | USD 4.00 | | 4.00 | |
| | SQ | 1.000 | CSN | USD 25.00 | | 25.00 | |
| | VS | 1.000 | C4D | USD 6.00 | | 6.00 | |
| | CY | 1.000 | C4D | CNY 560.00 | 560.00 | | |
| | DF | 1.000 | CSN | CNY 115.00 | 115.00 | | |

Rate of exchange
Number of Original B(s)/L   3
Total   CNY 675.00
        USD         3585.00
Payable at   XINGANG   NEW YORK

A-1

# YANG MING MARINE TRANSPORT CORP

# BILL OF LADING

| Shipper: | Booking No. | B/L No. |
|---|---|---|
| HARBOR INTERNATIONAL FURNITURE CO.,LTD.NO.15 YINGBIN ROAD,URUMQI, XINJIANG,CHINA 830026 TEL:0991-3628255 FAX:0991-3850299 | YMAW169201 | YMLUE235003904 |
| | Export References | |

| Consignee: | Forwarding agent references |
|---|---|
| M FORTUNOFF OF WESTBURY CORP 70 CHARLES LINDBERGH BLVD UNIONDALES,NY 11553 T:516-542-5836 FAX:516-542-4424 | |
| | Point and Country of Origin of goods |

| Notify party | ALSO NOTIFY |
|---|---|
| M FORTUNOFF OF WESTBURY CORP 70 CHARLES LINDBERGH BLVD UNIONDALES,NY 11553 T:516-542-5836 FAX:516-542-4424 | MEADOWS NYE 2506 FOREST AVENUE STATEN ISLAND,NY 10303 TEL:718-983-9702 FAX:718-494-4167 CONTACT:LISA FORD |

| Pre-carriage by | *Place of Receipt | Onward inland routing |
|---|---|---|
| EASLINE TIANJIN V.192 | XINGANG, CHINA | AWT-All Water |

| Vessel   Voy No.   Flag | Port of Loading | |
|---|---|---|
| HANJIN NAGOYA 053E | XINGANG, CHINA | |

| Port of Discharge | *Place of Delivery | Delivery status |
|---|---|---|
| NEW YORK, NY | NEW YORK, NY | |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement Gross Weight(KGS) |
|---|---|---|---|
| | 1 CTNR | SHIPPER'S LOAD AND COUNT. S.T.C : 213 CARTONS | 67.900 CBM 6194.000 KGS |
| LEGACY ITEM NO.: P.O.NO.:102305I C/NO.1-213 MADE IN CHINA | | WOODEN K.D. FURNITURE (TABLE,CHAIR,CHEST) PURCHASE ORDER NUMBER:102305I SHIP TO:M FORTUNOFF OF WESTBURY CORP HANOVER WAREHOUSE 100 CENTRAL AVE BLDG#11 SOUTH KEARNY,NJ,UNITED STATES 07032 ITEM:441 SOLID :NEW ZEALAND PINE VENEER:WESTERN KNOTY PINE ***THE INLAND TRANSIT BEYOND B/L FINAL DESTINATION TO SOUTH KEARNY,NJ SHALL BE ARRANGED BY CARGO OWNER AND AT THEIR COSTS AND RISKS. THIS SHIPMENT CONTAINS NO SOLID | FREIGHT COLLECT LOADED ON M/V : EASLINE TIANJIN VOY : 192 AT: XINGANG, CHINA ON: 2006.07.08 CRD:2006.07.06 |
| YMLU9216532  40'HQ FCL/FCL YML7728117 | 213 CARTONS | | |

| | | | Place and Date of Issue | XINGANG, TJ  2006.07.08 |
|---|---|---|---|---|
| Declared value $ | If Merchant enters value of Goods and pays the applicable ad valorem rate. Carrier's package limitations shall not apply. See Clause 23 (2)(3) hereof. | | On Board Date | 2006.07.08 |
| | | | B/L NO | YMLUE235003904 |

| ITEM NO | C-G | RATED AS | PER | RATE | PREPAID | COLLECT |
|---|---|---|---|---|---|---|
| Freight as Arranged | | | | | | |

Number of Original B(s)/L: 3

Date of Exchange
payable at   XINGANG,TJ   NEW YORK, NY

By _____ as agent for Yang Ming Marine Transport Corporation, as carrier

A-2

# YANG MING MARINE TRANSPORT CORP.

**BILL OF LADING** (8)

| Shipper | Booking No. | B/L No. |
|---|---|---|
| MARKOR INTERNATIONAL FURNITURE (TIANJIN) MANUFACTURE CO.,LTD. 51, SEVENTH AVENUE,TEDA TIANJIN,CHINA 300457 TEL:09913628555 FAX:09913650299 | YXAM269262 | YMLUE235003905 |

**Export References**

**Consignee**
M FORTUNOFF OF WESTBURY CORP
70 CHARLES LINDBERGH BLVD
UNIONDALES,NY 11553
T:516-542-5836 FAX:516-542-4424

**Forwarding agent references**

**Point and Country of Origin of goods**

**Notify party**
M FORTUNOFF OF WESTBURY CORP
70 CHARLES LINDBERGH BLVD
UNIONDALES,NY 11553
T:516-542-5836 FAX:516-542-4424

**ALSO NOTIFY**
MEADOWS M/E
2806 FOREST AVENUE STATEN ISLAND,NY
10303 TEL:718-983-9702
FAX:718 494-4167 CONTACT:LISA FORD

| Pre-carried by | Place of Receipt | Onward inland routing |
|---|---|---|
| EASLINE TIANJIN V.192 | XINGANG, CHINA | AWT-All Water |

| Vessel  Voy No  flag | Port of Loading |
|---|---|
| HANJIN NAGOYA 053E | XINGANG, CHINA |

| Port of Discharge | Place of Delivery | Delivery status |
|---|---|---|
| NEW YORK, NY | NEW YORK, NY | |

**PARTICULARS FURNISHED BY MERCHANT**

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M3) Gross Wgt(KGS) |
|---|---|---|---|
| | 1 CTNR | SHIPPER'S LOAD AND COUNT. S.T.C : 170 CARTONS | 65.900 CBM 6952.000 KGS |
| LEGACY ITEM NO.: P.O.NO.:102304I C/NO.1-170 MADE IN CHINA | | WOODEN K.D. FURNITURE (TABLE,CHAIR,CHEST,BED) PURCHASE ORDER NUMBER:102304I SHIP TO:M FORTUNOFF OF WESTBURY CORP HANOVER WAREHOUSE 100 CENTRAL AVE BLDG#11 SOUTH KEARNY,NJ.UNITED STATES 07032 ITEM:440,441 SOLID :NEW ZEALAND PINE VENEER:WESTERN KNOTY PINE ***THE INLAND TRANSIT BEYOND B/L FINAL DESTINATION TO SOUTH KEARNY,NJ SHALL BE ARRANGED BY CARGO OWNER AND AT THEIR COSTS AND RISKS. THIS SHIPMENT CONTAINS NO SOLID | FREIGHT COLLECT LOADED ON M/V : EASLINE TIANJIN VOY : 192 AT: XINGANG, CHINA ON: 2006.07.08 CRD:2006.07.06 |
| YMLU8152440   40'HQ FCL/FCL  YML/7736170 | | 170 CARTONS | |

Place and Date of Issue: XINGANG, RC  2006.07.06
On Board Date: 2006.07.06
B/L NO: YMLUE235003905

| ITEM NO | D/C | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| Freight as Arranged | | | | | | | |

payable at   XINGANG   NEW YORK, NY

A·3

0005

陽明海運股份有限公司
YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING

| Shipper | Booking No. | B/L No. |
|---|---|---|
| T.H.I. GROUP LTD. TIANJIN OFFICE RM1702, NO.81 TIANXING RIVERFRONT SQUARE, SHIYIJING ROAD, HEDONG DISTRICT, TIANJIN, CHINA.P.R.C.300171 TEL:022-24310136 FAX:022-24137032 | YXAW169116 | YMLUE235004441 |
| | Export Reference AUTO-NVO/EMIF | |
| Consignee EMPIRE INTER-FREIGHT CORP. 3840 PARK AVENUE, SUITE 201 EDISON, NJ 08820 USA TEL:732-6359696 FAX:732-6359595 ATTN:PETER SHEN | Forwarding agent references | |
| | Point and Country of Origin of goods | |
| Notify party SAME AS CONSIGNEE | ALSO NOTIFY | |

| *Precarried by | *Place of Receipt XINGANG, CHINA | Onward inland routing IPI | |
|---|---|---|---|
| Vessel   Voy No.   Flag | Port of Loading XINGANG, CHINA | | |
| Port of Discharge NEW YORK, NY | *Place of Delivery BOSTON, MA | Delivery status Door | |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M) GrossWeight(KGS) |
|---|---|---|---|
| | 2 CTNRS | SHIPPER'S LOAD AND COUNT. S.T.C : 2794CARTONS KITCHENWARE (STANILESS STEEL FORK, KNIFE, SCOOP) ***TLX RLS*** | 103.000CBM 38235.000KGS |
| PO#:45034860/4503479 2 TAUNTON VIA BOSTON C/NO.:MADE IN CHINA | | | FREIGHT COLLECT LOADED ON M/V: AT:XINGANG,CHINA ON:JUL/08/06 CRD:JUL/06/06 |
| CAXU7379780 40'DC FCL/FCL 7742634 | 1794CARTONS | 19135.00KGS 47.000CBM | |
| YMLU4394605 40'DC FCL/FCL 7742633 | 1000CARTONS | 19100.00KGS 56.000CBM | |

Declared value $_____ If Merchant enters a value of Goods and pays the applicable ad valorem rate, Carrier's package limitation shall not apply. See Clause 23 (2)(4)(3) hereof.

| Place and Date of Issue XINGANG | JUL/08/06 |
|---|---|
| On Board Date | JUL/08/06 |

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L No |
|---|---|---|---|---|---|---|---|
| | OF | 2.000 | C4D | USD 3800.00 | | 7600.00 | YMLUE235004441 |
| | FS | 2.000 | C4D | USD 70.00 | | 140.00 | |
| | PE | 2.000 | C4D | USD 200.00 | | 400.00 | |
| | VS | 2.000 | C4D | USD 6.00 | | 12.00 | |
| | SQ | 1.000 | CSN | USD 25.00 | | 25.00 | |
| | CY | 2.000 | C4D | CNY 560.00 | 1120.00 | | |
| | DF | 1.000 | CSN | CNY 115.00 | 115.00 | | |

Young Carrier

| Rate of exchange | | | | | CNY | 1235.00 | | **COPY** |
| Number of Original B(s)/L 3 | | | Total | USD | | 8177.00 | | |
| | | | Payable at | XINGANG | | BOSTON | | BY ___ as agent for Yangming Marine Transport Corporation, as carrier |

A-4

陽明海運股份有限公司
YANG MING MARINE TRANSPORT CORP.

COPY NON-NEGOTIABLE
BILL OF LADING

| Shipper | Booking No. | B/L No. |
|---|---|---|
| LIAONING ZHH-CDS LOGISTICS CO., LTD.<br>ROOM B208, GUOMEN BUILDING 1 ZUO JIA ZHUANG, CHAOYANG DISTRICT BEIJING<br>100028, P.R.C.   TEL:86 10 64688882<br>FAX:86 10 64684679 | YXAW169090 | YMLUE235003926 |

Export References: AUTO-NVO/ANQI

Consignee:
CDS OVERSEAS INC.
ONE CROSS ISLAND PLAZA, SUITE
111, ROSEDALE NY 11422, U.S.A.
TEL:(718)276-3388
FAX:(718)276-2288

Forwarding agent references

Notify party
SAME AS CONSIGNEE

Point and Country of Origin of goods

ALSO NOTIFY

| Pre-carried by | Place of Receipt | Onward inland routing |
|---|---|---|
| EASLINE TIANJIN V.192 | XINGANG, TJ | AWT-All Water |

| Vessel Voy No. | Port of Loading | |
|---|---|---|
| TIANJIN NAGOYA 053E | XINGANG, TJ | |

| Port of Discharge | Place of Delivery | Delivery status |
|---|---|---|
| NEW YORK, NY | NEW YORK, NY | |

PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M) |
|---|---|---|---|
| | 2 CTNR | SHIPPER'S LOAD AND COUNT<br>S.T.C : 1245 CARTONS | 24567.000 KGS |
| _X_X_<br>GROSS WEIGHT_<br>NET WEIGHT_<br>NET NET WEIGHT<br>DESTINATION PORT NEW YORK<br>ENDURANCE LLC<br>MADE IN :MONGOLIA | | MEN'S 100%COTTON KNIT T-SHIRT<br>MEN'S 75%COTTON 25%POLYESTER KNIT PANT<br>S/C#675506<br>***TLX RLS*** | FREIGHT COLLECT<br>LOADED ON M/V<br>EASLINE TIANJIN<br>VOY : 192<br>AT: XINGANG, TJ<br>ON: 2006.07.08<br>CRD:2006.07.06 |
| YMLU4796693  40'DC FCL/FCL YML7738002<br>YMLU8289594  40'HQ FCL/FCL YML7738084 | | 562 CARTONS<br>683 CARTONS | |

XINGANG, TJ 2006.07.08

Declared value $
If Merchant enters value of Goods and pays the applicable ad valorem rate, Carrier's package limitation shall not apply. See Clause 23 (2)&(3) hereof.

Place and Date of Issue 2006.07.08
On Board Date

YMLUE235003926

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | B/L NO |
|---|---|---|---|---|---|---|---|
| | | | | CNY<br>USD<br>Total | 1235.00<br>25.00 | 7470.00 | |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back and to carrier's applicable tariff.
If required by the Carrier, this Bill of Lading duly endorsed be surrendered in exchange for the goods or Delivery An endorsement on this Bill of Lading that the Goods "On Board" shall mean that the Goods are loaded on the Vessel named in this Bill of Lading, or loaded On the facilities of any Underlying Carrier or Sub-Contractor Carriage in accordance with the terms of this Bill of Lading IN WITNESS WHEREOF, the undersigned has signed of Bills of Lading all of the same tenor and date, one of Young Carrier Company Ltd

Rate of Exchange
Number of Original B(s)/L

See Attached List

XINGANG, TJ   NEW YORK, NY

A-5

 

**YANG MING MARINE TRANSPORT CORP**

## COPY NON-NEGOTIABLE BILL OF LADING

| Shipper | Booking No | B/L No |
|---|---|---|
| PHOENIX INT'L FREIGHT SERVICES LTD. (TIANJIN) ROOM 1110, THE EXCHANGE NORTH TOWER, 189 NANJING ROAD, HEPING DISTRICT, TIANJIN 300051 P.R.C TEL:(022)85685588 FAX:(022)85685585 | YXPS168307 | YMLUW235012895 |

Export References: AUTO-NVO/PIFW

| Consignee | Forwarding agent references |
|---|---|
| PHOENIX INT'L FREIGHT SERVICES, LTD. (CHICAGO) 855 IL RT 83 (BUSSE ROAD) BENSENVILLE IL 60106-1219  TEL:630 274 7950 FAX:630 274 7945 | 147370 |

Point and Country of Origin of goods:

Notify party: SAME AS CONSIGNEE

ALSO NOTIFY:

| Pre-carriage by | Place of Receipt | Onward inland routing |
|---|---|---|
| EASLINE TIANJIN V.192 | XINGANG, TJ | IPI-Inland Point Inter-modal |

| Vessel Voy No | Port of Loading | |
|---|---|---|
| YM WEALTH 26E | XINGANG, TJ | |

| Port of Discharge | Place of Delivery | Delivery status |
|---|---|---|
| LOS ANGELES, CA | CHICAGO, IL | RAMP |

### PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS CONTAINER NOS | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement/Gross Weight |
|---|---|---|---|
| | 1 CTNR | SHIPPER'S LOAD AND COUNT: S.T.C : 2052 CARTONS | 57.540 CBM 19542.000 KGS |
| P.O.TJC-71301-7201 | | CAULKING GUN EXTENSION POLE THIS SHIPMENT CONTAINS NO SOLID WOOD PACKING MATERIAL. | FREIGHT COLLECT LOADED ON M/V : EASLINE TIANJIN VOY : 192 AT: XINGANG, TJ ON: 2006.07.08 ORD:2006.07.06 |
| MLCU4319495  40'DC FCL/FCL 007171 | | 2052 CARTONS | |

Place and Date of Issue: XINGANG, TJ  2006.07.08
On Board Date: 2006.07.08
B/L NO: YMLUW235012895

| ITEM NO | CHG | RATED AS | PCR | RATE | PREPAID | COLLECT |
|---|---|---|---|---|---|---|
| Freight as Arranged | | | | | | |

Young Carrier Company Ltd

Declared value $
Rate of Exchange

A-6

```
T.H.I. GROUP LTD. TIANJIN OFFICE
RM1702,NO.81 TIANXING RIVERFRONT              0061        YMLUE235003933
SQUARE,SHIYIJING ROAD,HEDONG
DISTRICT,TIANJIN,CHINA.P.R.C.300171 AUTO-NVO/LUFR
   TEL:022-24310136 FAX:022-24137032

LAUFER FREIGHT LINES,LTD.
20 VESEY STREET,ST 601 NEW YORK NY
10007 TEL:1-212-9456000
FAX:1-212-9453324


SAME AS CONSIGNEE




                    XINGANG
         019E
YM SHANGHAI         XINGANG

NEW YORK            NEW YORK


              1 CTNR   SHIPPER'S LOAD AND COUNT.            26.030 CBM
                       S.T.C.:   660 CARTONS              19505.000 KGS
--------------------------------------------------------------------------
F.5441                 BUILDING MATERIAL                  FREIGHT CLT
PORT OF NEW YORK       (CHINESE WHITE OAK FLOORING)
283PO#1171             A/C CROSS ISLAND TRADING           LOADED ON M/V:
MADE IN CHINA                                             YM SHANGHAI
                                                          VOY: 019E
                                                          AT:  XINGANG
                                                          ON:  JUL/08/06
                                                          CRD: JUL/06/06




YMLU5044350 40'DC FCL/FCL 751242             660CARTONS 19505.00KGS 26.030M
                                                XINGANG          JUL/08/06
                               TANG                              JUL/08/06
                                                          YMLUE235003933
258806
SEE ATTACHED LIST ...



                                                       T.H.I. (Hong Kong)
                                                       Ltd., Shanghai Office


                           USD              3471.00
         3                 CNY    675.00


See Attached List ...          XINGANG
```

```
** ATTACHED LIST **        YM SHANGHAI V-019E


B/L NO: YMLUE235003933     MFST NO:      006                          PAGE: 1

FREIGHT/CHARGE DETAILS
-----------------------------------------------------------------------------
 58806     OF  1.000C4DUSD  3200.00                 3200.00
           PE  1.000C4DUSD   200.00                  200.00
           SQ  1.000CSNUSD    25.00                   25.00
           VS  1.000C4DUSD     6.00                    6.00
           CY  1.000C4DCNY   560.00      560.00
           DF  1.000CSNCNY   115.00      115.00
           CK  1.000CSNUSD    40.00                   40.00


** END OF ATTACHED LIST **
```

# YANG MING MARINE TRANSPORT CORP.

## SEA WAYBILL

| Shipper | Booking No | Waybill No |
|---|---|---|
| TIANJIN MASTER HOME FURNITURE CO.,LTD TIANJIN ECONOMIC TECHNOLOGICAL DEVELOPMENT AREA(TEDA) 159 DONGTING ROAD TIANJIN 300457 P.R. CHINA TEL:022-25324746 FAX:022-25324744 | YXAW169203 | YMLUE235003906 |
| | Export References | |

| Consignee | Forwarding agent references |
|---|---|
| KLAUSSNER INTERNATIONAL ,LLC 405 LEWALLEN ROAD ASHEBORO,NC 27205 PHONE:336-625-6174 FAX:336-626-3422 | |
| | Point and Country of Origin of goods |

| Notify party | ALSO NOTIFY |
|---|---|
| ROGERS & BROWN 348 SHIPYARD BLVD WILMINGTON,NC 28412 PHONE:910-395-6200 FAX:910-395-2806 | PLANT 18-SE WAREHOUSE 200 KENNEDY STREET ROBBINS,NC 27325 TEL:(336)625-6174 FAX:(336)626-3422 |

| Precarried by | Place of Receipt | Onward inland routing |
|---|---|---|
| EASLINE TIANJIN V.192 | XINGANG, TJ | AWT-All Water |

| Vessel Voy No. flag | Port of Loading |
|---|---|
| YM KAOHSIUNG 014E | XINGANG, TJ |

| Port of Discharge | Place of Delivery | Delivery status |
|---|---|---|
| WILMINGTON, NC | ROBBINS, NC | DOOR |

### PARTICULARS FURNISHED BY MERCHANT

| MKS & NOS/CONTAINER NOS | NO OF PKGS | DESCRIPTION OF PACKAGES AND GOODS | Measurement(M) Gross Weight KGS |
|---|---|---|---|
| | 3 CTNR | SHIPPER'S LOAD AND COUNT S.T.C : 396 CARTONS | 161.052 CBM 16040.000 KGS |
| KLAUSSNER INTERNATIONAL | | FURNITURE(BED,DRESSER,MIRROR,CHEST, ARMOIRE,CURIO,TABLE,CHAIR) PO# 48298,50645,50643 S/C# 432406 | FREIGHT COLLECT LOADED ON M/V : EASLINE TIANJIN VOY : 192 AT: XINGANG, TJ ON: 2006.07.08 CRD:2006.07.07 |
| TEXU5230915  40'HQ FCL/FCL YML7742639 | | 153 CARTONS | |
| YMLU2769132  20'DC FCL/FCL YML7742636 | | 90 CARTONS | |
| YMLU8255697  40'HQ FCL/FCL YML7742640 | | 153 CARTONS | |

| Declared value $ | Place and Date of Issue | XINGANG, TJ  2006.07.08 |
|---|---|---|
| | On Board Date | 2006.07.08 |

| ITEM NO | CHG | RATED AS | PER | RATE | PREPAID | COLLECT | SEA WAYBILL NO. |
|---|---|---|---|---|---|---|---|
| Freight as Arranged | | | | | | | YMLUE235003906 |

The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back hereof and to carrier's applicable tariff.

Delivery of the Goods will be made to the Consignee or his authorized representative upon proper proof of identity and authorization without the need of producing or surrendering a copy of this Sea Waybill.

Young Carrier Company Ltd

| Rate of Exchange | | | |
|---|---|---|---|
| | Total | | |
| | payable at | XINGANG, TJ | ROBBINS, NC |
| | or through transportation | | By _____ as agent for Yang Ming Marine Transport Corporation, as carrier |

A-7

# EXHIBIT B

RECEIVED by the Carrier from the Merchant as apparent good order and condition unless otherwise indicated herein, the Goods, or the Container(s) or package(s) said to contain the cargo herein mentioned, to be carried subject to all the terms and conditions provided for on the face and back of this Bill of Lading by the vessel named herein or any substitute at the Carrier's option and/or other means of transport, from the place of receipt or the port of loading to the port of discharge or the place of delivery shown herein and there to be delivered unto order or assigns. The weight, measure, marks, numbers, quality, quantity, contents and value given herein are furnished by the Merchant and the Carrier shall not be responsible for the correctness thereof. The number of Containers or other packages or units shown in the box opposite entitled "Total Number of Containers or Packages received by the Carrier" shall be conclusive evidence of the number of Containers or other packages or units received for Carriage subject to all the terms and conditions hereof.

In accepting this Bill of Lading, the Merchant agrees to be bound by all the stipulations, exceptions, terms, and conditions on the face and back hereof, whether written, typed, stamped or printed, as if signed by the Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all agreements or freight engagements for the shipment of the Goods are superseded by this Bill of Lading.

1. **DEFINITIONS.**
   The following words whether contained on the front or back hereof have the meanings hereby assigned:
   (a) "Carriage" means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods covered by this Bill of Lading.
   (b) "Carrier" means Yangming Marine Transport Corporation ("Yangming").
   (c) "Container" includes any ISO standard container, trailer, transportable tank, flat rack and/or other item of transportation equipment in conformance with ISO standards.
   (d) "Freight" includes all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading.
   (e) "Goods" means the whole or any part of the cargo received from the Merchant and includes any equipment or Container(s) not supplied by or on behalf of the Carrier.
   (f) "Holder" means any Person for the time being in possession of this Bill of Lading to whom the property in the Goods has passed on, or by reason of, the consignment of the Goods or the endorsement of this Bill of Lading or otherwise.
   (g) "Merchant" includes the shipper, Holder, consignee or receiver of the Goods or any Person owning or entitled to the possession of the Goods or this Bill of Lading and anyone acting on behalf of any such Person.
   (h) "Multimodal Transport" arises if the Place of Receipt and/or the Place of Delivery are indicated on the face hereof in the relevant spaces.
   (i) "Person" includes an individual, group, company or other entity.
   (j) "Port-to-Port" arises if the Carriage is not Multimodal Transport.
   (k) "Sub-Contractor" includes owners and operators of Vessels (other than the Carrier), slot chartered owners, stevedores, terminal and group age operators, Underlying Carriers and any independent contractor employed by the Carrier in performance of the Carriage.
   (l) "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Bill of Lading.
   (m) "Vessel" includes the Vessel named on the face hereof together with any ship, craft, lighter, barge, feedership, ferry or other means of transportation substitute in whole or in part, for the Vessel named on the face hereof.

2. **CARRIER'S TARIFF.**
   The terms and conditions of Carrier's applicable Tariff are incorporated herein, including those provisions relating to Container and vehicle demurrage. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. In the event of any inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

3. **MERCHANT'S WARRANTY.**
   The Merchant warrants that in agreeing to the terms hereof he is, or has the authority of, the Person owning, or entitled to possession of the Goods and this Bill of Lading.

4. **EXEMPTIONS AND IMMUNITIES OF SERVANTS, AGENTS, STEVEDORES, AND OTHER SUB-CONTRACTORS.**
   In contracting for the following exemptions and limitation of, and exoneration from, liability, the Carrier is acting as agent and trustee for all other Persons named in this clause. It is understood and agreed that, other than the Carrier, no Person, firm or corporation or other legal entity whatsoever (including the Master, Officers and crew of the vessel, agents, Underlying Carriers, Sub-Contractors and/or any other independent contractors whatsoever utilized in the Carriage) is, or shall be deemed to be, liable with respect to the Goods as carrier, bailee or otherwise. If it should be adjudged that any Person other than the Carrier is carrier or bailee of the Goods, or under responsibility with respect thereto, then all exemptions and limitations of, and exonerations from, liability provided by law or by the terms in this Bill of Lading shall be available to such Person.
   It is also agreed that the Vessel and each of the aforementioned Persons referred to in the preceding clause are intended beneficiaries, but nothing herein contained shall be construed to limit or relieve them from any liability whatsoever to the Carrier.

5. **SCOPE OF THE VOYAGE.**
   The intended Carriage may include the use of Underlying Carriers and it is expressly agreed that the use of such Underlying Carriers shall not constitute a deviation. In this regard, the Carrier may at any time, and without notice to the Merchant, use any means of Carriage or storage whatsoever, transfer the Goods from one conveyance to another, including transshipping or carrying the Goods on a Vessel other than that specified on the face hereof, proceed by any route in the Carrier's discretion (whether or not the nearest or most direct, customary or advertised route) and proceed to, or stay at, any place or port whatsoever, load and unload the Goods at any place or port (whether or not such port is named on the face of this Bill of Lading as the port of loading or the port of discharge) and store the Goods at any such place or port, and/or comply with any orders or recommendations given by any government or local authority or any Person or body acting or purporting to act on behalf of such government or local authority.
   The liberties set out in this clause may be invoked by the Carrier for any purpose whatsoever, whether or not connected with the Carriage of the Goods, including loading or unloading other goods, bunkering, undergoing repairs, adjusting instruments, picking up or landing any Persons, (including but not limited to Persons involved with the operation or maintenance of the Vessel) and assisting Vessel(s) in all situations. Anything done in accordance with this clause or any delay arising therefrom shall be deemed to be within the contractual Carriage and shall not be a deviation.

6. **LIBERTIES CLAUSE.**
   If at anytime the Carriage is, or is likely to be affected by any situation which has given or is likely to give rise to danger, injury, loss, delay, risk of capture, seizure or detention, or disadvantage of whatsoever nature to the Vessel, the Carrier, any Underlying Carrier or Sub-Contractor utilized in the Carriage of the Goods, or if such situation makes it in any way unsafe, impracticable or unlawful or against the interest of the Carrier or the Merchant to commence or continue the Carriage of the Goods, the Carrier may, at any time, in its sole discretion:
   (1) Unpack the Container(s) or otherwise dispose of the Goods in such way as the Carrier may deem advisable at the risk and expense of the Merchant;
   (2) Carry the Goods to the contracted port of discharge or place of delivery, whichever is applicable, by any alternative route or means of transportation to that indicated in this Bill of Lading, or that which is usual for Goods consigned to that port of discharge or place of delivery. Any such additional Freights and charges shall be for the Merchant's account;
   (3) Suspend the Carriage of the Goods and store them ashore or afloat upon the terms of this Bill of Lading and endeavor to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension of the Carriage. Any additional Freight or charges shall be for the account of the Merchant; or
   (4) Abandon the Carriage of the Goods and place them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the Carrier's responsibility in regard to the Goods shall cease. Notwithstanding the abandonment, the Carrier nevertheless be entitled to full Freight on the Goods and the Merchant shall pay any additional costs of the Carriage to, and delivery and storage at such place or port.
   The situations referred to in this Clause 6 shall include, but shall not be limited to, those caused by the existence or apprehension of war whether declared or undeclared, hostilities, warlike or belligerent acts or operations, riots, civil commotions or other disturbances, strong, flood, earthquake, or any other act of God, closure of, obstacles in, or danger to any canal, blockade of port, or placing of interdiction or prohibition of or restriction on commerce or trading, quarantine, sanitary or other similar regulations or restrictions, strikes, lock outs or other labor troubles whether partial or general, congestion of port, wharf, sea terminal, or the facilities of any Sub-Contractor or Underlying Carriers used in the Carriage covered by this Bill of Lading.

7. **CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT.**
   (A) Port-to-Port Shipments
   (1) When loss or damage has occurred between the time of loading of the Goods by the Carrier, or any Underlying Carrier, at the port of loading and the time of discharge by the Carrier, or any Underlying Carrier, at the port of discharge, the responsibility of the Carrier shall be determined in accordance with any National law making the Hague Rules, or any amendments thereto including the Hague-Visby amendments, compulsorily applicable to this Bill of Lading. The Carrier shall be under no liability whatsoever for loss of, or damage to, the Goods, howsoever occurring, if such loss or damage arises prior to loading onto, or subsequent to the discharge from, the Vessel. Notwithstanding the foregoing, in the event that any applicable compulsory law provides to the contrary, the Carrier shall have the benefit of every right, defense, limitation and liberty set forth in the Hague-Rules, or, if applicable, the Hague-Visby amendments as applied by this Clause during such additional compulsory period of responsibility.
   (2) Notwithstanding anything contained in the preceding provision, in the event that this Bill of Lading covers shipments to or from the United States, then the Carriage of Goods by Sea Act of the United States ("COGSA") shall be compulsorily applicable and shall (except as may be otherwise specifically provided elsewhere herein) also govern before the Goods are loaded on and after they are discharged from the Vessel provided, however, that the Carrier shall at said times are actual custody of the Goods or at the Goods are in the custody of any Underlying Carrier or Sub-Contractor.
   (B) (1) Multimodal Transport - With respect to Multimodal Transportation from, to, or within the United States, where the Goods are in the custody of the Carrier, or any Underlying Carrier, such Multimodal Transport will be governed by the provisions of Clause 7(A).
   (2) In the event Clause 7(A) is held inapplicable to such Multimodal Transportation from, to, or within the United States, then the Carrier's liability will be governed by and be subject to the terms and conditions of the Underlying Carrier's Bill of Lading together with the Underlying Carrier's Tariff which shall be incorporated herein as if set forth at length. Notwithstanding the foregoing, in the event such contract of Carriage between the Carrier and any Underlying Carrier, such Multimodal Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of such contract(s) shall be available to the Merchant at any office of the Carrier upon request.
   (3) With respect to all water Multimodal Transport outside the United States COGSA is not compulsorily applicable, then according to Cl. 7(E), below, the Hague Rules, and any amendments thereto which are compulsorily applicable including the Hague Visby Amendments, shall apply as per Clause 7(A).
   (4) With respect to road Carriage between countries in Europe, liability shall be determined in accordance with the Convention on the Contract for the International Carriage of Goods by Road ("CMR"), dated May 19, 1956, and during rail Carriage between countries in Europe according to the International Agreement on Railway Transports ("CIM"), dated February 25, 1961. With respect to rail or road transportation within a State other than the United States, liability shall be determined in accordance with the internal law of such State and/or any International Convention which is compulsorily applicable by the laws of such State. In the absence of such laws or conventions then the provisions of Clause 7(B)(5) will apply.
   (5) In the event the provisions of this sub-section 7(B)(1-4) are held inapplicable to any aspect of the Carriage covered by this Bill of Lading whether by local law or International Convention otherwise, the Carrier shall nevertheless be relieved of liability for loss or damage occurring during the Carriage if such loss or damage was caused by any cause or event which Carrier could not avoid and the consequences whereof he could not prevent by the exercise of reasonable diligence.
   (C) Unknown Liability - When it cannot be established in whose custody the Goods were when the loss or damage occurred, it shall be conclusively presumed to have occurred during sea Carriage and any liability thereof shall be governed as provided in Clause 7(A) hereof.
   (D) Subrogation - When any claims are paid by the Carrier to the Merchant, the Carrier shall be automatically subrogated to all rights of the Merchant against all others, including Underlying Carriers, on account of such loss or damage.
   (E) Conflict of Law - In the event the Carriage covered by this Bill of Lading is subject to two or more compulsory national laws, then the national law of the jurisdiction in which any action is brought shall be applicable.

8. **CONTAINER PACKED BY CARRIER.**
   Where the Goods, receipt of which is acknowledged on the face of this Bill of Lading, are not already contained in Container(s) at the time of such receipt, the Carrier shall be at liberty to pack and carry such Goods in Containers.

9. **CONTAINER PACKED BY MERCHANT - MERCHANT'S RESPONSIBILITY.**
   Where the Goods have been packed into Container(s) by or on behalf of the Merchant, it is mutually agreed that:
   (1) Any statement on this Bill of Lading relating to marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value, or other particulars of the contents of such Container(s) are as furnished by the Merchant and are unknown to the Carrier and the Carrier accepts no liability in respect thereof. The acknowledgement of the Carrier is confined to the number and apparent order and condition of Container(s).
   (2) The Merchant accepts complete responsibility for the packaging, securing, and stuffing of the contents of the Container(s), the closing and sealing of the Container(s) and the fitness of the Container(s) and the contents thereof for Carriage in accordance with the terms of this Bill of Lading. The Merchant hereby undertakes to indemnify the Carrier against any loss, damage, expense, liability, penalty and fine directly or indirectly suffered by the Carrier arising from any improper or inadequate stuffing, securing, closing or sealing, or in fitness of the Container(s) or the contents thereof.
   (3) The Carrier shall be at liberty to inspect the Goods without notice at any time or place.
   (4) Container(s) shall be properly sealed and the seal identification reference as well as the Container(s) reference shall be shown herein. If the Container(s) are delivered from the Carrier with seals intact, the Carrier shall not be liable for any loss or damage to the Goods unless it is proven that such loss or damage was caused by Carrier's negligence. In case the seal of the Container(s) is broken by Customs or other governmental authorities for inspection of the Goods, the Carrier shall not be liable for any loss or damage or any other consequences arising or resulting therefrom.
   (5) The Merchant is obliged to clean the Container(s) at his expense before redelivery to the Carrier so that they are suitable for further service. If the Merchant fails to redeliver the Container(s) as aforesaid, all charges in connection herewith shall be born by the Merchant.

10. **CARRIER'S CONTAINER - MERCHANT'S RESPONSIBILITY.**
    (1) The Merchant shall inspect the Container(s) which are lent, leased, or in any way furnished by the Carrier before the Goods are packed into such Container(s), and the Container(s) so packed by the Merchant shall be deemed to have been accepted by him in good order and suitable condition for the purposes of Carriage contracted herein unless the Merchant provides written notice or remarks in writing concerning the condition of the Container(s). Unless such written notification is given, the Merchant is precluded from filing a claim against the Carrier for any loss or damage to the Goods by reason of insufficient or unsound condition of the Container(s).
    (2) The Merchant shall assume full responsibility and indemnify the Carrier for any loss or damage to the Container(s) and/or other equipment which occurred while in his possession or in possession of his agents or inland carriers engaged by or on behalf of the Merchant.
    (3) The Carrier shall not, in any event, be liable for, and the Merchant shall indemnify and hold the Carrier harmless from and against, any loss or damage to property of other Persons or injuries to other Persons occurring while the Carrier's Container(s) is (are) in the possession of, or being used by, the Merchant or Merchant's agents or inland carriers engaged by or on behalf of the Merchant.

11. **SPECIAL CONTAINERS AND PERISHABLE GOODS.**
    Unless specifically requested by the Merchant in writing, the Carrier is not required to provide anything other than a 20 or 40 foot standard dry Container(s). In the event the Carrier agrees to carry the Goods in a special Container(s) such as a refrigerated, heated or insulated Container(s), Goods of a perishable nature shall be carried in such dry Container(s) without special protection, services or other measures unless it is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container(s). The Merchant is required to give written notice of requested temperature settings of the thermostatic controls before receipt of the Goods by the Carrier. When the Carrier's receipt is received, the Carrier will verify that the thermostatic controls are set to maintain Container(s) temperature as requested. The Merchant is responsible for bringing the Goods to the proper temperature before loading the Goods into the Container(s), for the proper stowage of the Goods within the Container(s), for setting the temperature including maintenance and repair) during all times before the Container(s) is (are) delivered to the Carrier and after it is, (they) delivered by the Carrier. The Carrier is not responsible for produce deterioration caused by inherent vice, defects in the merchandise or transit times in excess of the produce shelf life. The Merchant is specifically advised that refrigerated, heated, specially ventilated or otherwise specially equipped Container(s) are not equipped to change the temperature of the Goods, but solely to maintain the temperature as received from the Merchant. If the Carrier is unable to determine whether the Goods were at the proper temperature when they were loaded into the Container(s) or when the Container(s) was (were) delivered to the Carrier, Carrier shall be deemed to have fulfilled its obligations under this Bill of Lading, and shall have no liability whatsoever, if the Goods are at a temperature of a range of plus or minus 2.5 degrees centigrade (4.5 degrees Fahrenheit) in regard to any carrying temperature designated in writing by the Merchant in this Bill of Lading. Goods subject to deterioration or damage by extremes of heat and/or cold which are shipped by Merchant in standard dry Container(s) rather than in refrigerated or temperature controlled Container(s) which can be supplied by the Carrier, are carried at Merchant's risk and Carrier assumes no liability whatsoever resulting from Merchant's acts or omissions in failing to request the proper Container(s).

12. **STOWAGE ON DECK.**
    (1) The Carrier has the right to carry Goods in Container(s) on deck, whether the Container(s) are owned or leased or have been packed or stuffed by or on behalf of the Merchant or the Carrier. When the Container(s) are carried on deck, the Carrier is not required to specially note, mark or stamp any statement of on deck Carriage on the face hereof, any custom to the contrary notwithstanding. The Goods so carried shall be subject to the applicable Hague Rules as provided for in the Clause Paramount hereof.
    (2) Notwithstanding Clause 12(1) above in the case of Goods which are stated on the face hereof as being carried on deck and which are so carried, the Hague Rules shall not apply and the Carrier shall be under no liability whatsoever for loss, damage or delay, howsoever arising.

13. **LIVE ANIMALS, PLANTS, PERISHABLE GOODS.**
    The Carrier shall not be responsible for any accident, disease, mortality, loss of or damage to live animals, birds, reptiles, fish, plants and perishable Goods arising or resulting from any cause whatsoever including the Carrier's negligence or the Vessel's unseaworthiness and shall have the benefit of all the provisions of this Bill of Lading.

14. **DANGEROUS GOODS AND CONTRABAND.**
    (1) The Carrier undertakes to carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or dangerous only upon the Carrier's acceptance of a prior written application by the Merchant for the Carriage of such Goods. Such applications must accurately state the nature, name, label and classification of the Goods as well as the method of rendering them innocuous, with the full names and addresses of the Merchant.
    (2) The Merchant shall undertake to ensure that the nature of the Goods referred to in the preceding paragraph is distinctly and permanently marked and manifested on the outside of the Goods, Container(s) and shall also undertake to submit the documents or certificates required by any applicable statutes or regulations or by the Carrier.
    (3) Whenever the Goods are discovered to have been received by the Carrier without complying with the foregoing, or the Goods are found to be contraband or prohibited by any law or regulation of the port of loading, discharge or call or any place or waters during the transport, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at the Carrier's discretion without compensation to the Merchant and the Merchant shall be liable to indemnify the Carrier against any kind of loss, damage or liability including loss of Freight, and any expenses directly or indirectly arising out of or resulting from such Goods.
    (4) The Carrier may exercise or enjoy the right or benefit conferred upon the Carrier under the foregoing whenever it is apprehended that the Goods received in compliance with the terms of this clause may seem likely to become dangerous to the Carrier, Vessel, Goods, Underlying Carriers, Sub-Contractors, Persons and/or other property. The Carrier has the right to inspect the Container(s) and the Goods carried therein at any time and anywhere without the Merchant's agreement and at the risk and expense of the Goods.

15. **VALUABLE GOODS.**
    The Carrier shall not be liable to any extent for any loss of or damage to or in connection with platinum, gold, silver, jewelry, radioisotopes, precious metals, precious stones, precious chemicals, bullion, specie, currencies, securities, negotiable instruments, writings, documents, pictures, embroideries, works of art, curios, heirlooms, collections of every nature or any other valuable Goods, whatsoever including Goods having particular value only for the Merchant, unless the true nature and value thereof have been declared in writing by the Merchant before receipt by the Carrier of the Goods and inserted on this Bill of Lading and unless ad valorem Freight shall have been fully prepaid thereon.

16. **LOSS, CONDENSATION, ETC.**
    It is agreed that superficial rust, oxidation or condensation inside the Container or any like condition due to moisture is not the responsibility of the Carrier, unless said condition arises out of Carrier's failure to provide a seaworthy Container to the Merchant prior to loading. If the Merchant requires special arrangements or care for the Carriage of such Goods, he must request same in writing to the Carrier and said arrangements must be noted on the face of this Bill of Lading and at special Freight, as required, must be paid by the Merchant.

17. **GOVERNMENT REGULATION AND PENALTY.**
    The Merchant shall comply with all requirements of Customs, Government authorities, port and other authorities, and shall bear and pay all duties, taxes, fines, imposts, expenses or losses incurred or suffered by reason of any failure to comply with such regulations, or by reason of any illegal, incorrect, or insufficient marking, number or addressing of the Goods, or the discovery of any drugs, narcotics, stowaways or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, and shall indemnify the Carrier in respect thereof.

18. **NOTIFICATION AND DELIVERY.**
    (1) Any mention in this Bill of Lading of parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any li- ability nor relieve the Merchant of any obligations hereunder.
    (2) The Merchant shall take delivery of the Goods within the time provided in the Carrier's applicable Tariff.
    (3) If the Merchant fails to take delivery of the Goods, or any part thereof, in accordance with this Bill of Lading, the Carrier may without notice remove the Goods, or that part thereof, and/or store the Goods, or that part thereof, ashore, afloat, in the open or undercover. Such storage shall constitute due delivery hereunder, and thereupon all liability whatsoever of the Carrier in respect of the Goods, or that part thereof, shall cease.
    (4) The Merchant's attention is drawn to the stipulations concerning free storage time and demurrage contained in the Carrier's applicable Tariff, which is incorporated in this Bill of Lading.

19. **FREIGHT AND CHARGES.**
    (1) Freight shall be payable at Carrier's option, on gross intake weight or measurement, or gross discharge weight or measurement, or an ad valorem basis, or per Container or package or customary freight unit basis or any other applicable rate as set forth in Carrier's Tariff. Freight may be calculated on the basis of the description of the Goods furnished by the Merchant, but Carrier may at any time, weigh, measure and value the Goods and open packages of the Goods in order to examine contents. In case the Merchant's description is found to be erroneous and additional Freight is payable, the Merchant and the Carrier shall be liable for any additional Freight and expense incurred in examining, weighing, measuring, fumigating and valuing the Goods.
    (2) Full Freight to the port of discharge, or, in case of through transportation to place of delivery named herein and all other charges against the Goods shall be considered completely earned on receipt of the Goods by the Carrier or Underlying Carrier as the case may be, whether the Freight or charges be prepaid or to be stated or intended to be prepaid or to be collected at port of discharge or destination or subsequently; and the Carrier shall be entitled absolutely, to all Freight and charges, and to receive and retain them under all circumstances whatever, whether the Vessel and/or the Goods are lost or not lost, or whether the voyage changed, broken up, frustrated or abandoned.
    (3) All Freight and charges shall be paid in full without any offset, counterclaim or deduction, in the currency named in this Bill of Lading, or, at the Carrier's option, in its equivalent in local currency at bank demand rates of exchange in New York as of the date payment of Freight shall be due hereunder. Any error in Freight or charges or in the classification herein of the Goods is subject to correction, and if on correction, the Freight or charges are higher, Carrier may collect the additional amount.
    (4) The Merchant and Goods shall be jointly and severally liable to Carrier for the payment of all Freight, demurrage, General Average, salvage and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due Carrier. Payment of ocean Freight and charges to a freight forwarder, broker or anyone other than the Carrier, or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk.

20. **GENERAL AVERAGE AND SALVAGE.**
    General average shall be adjusted, stated and settled at New York or at the last port of discharge or any other port or place at the Carrier's option according to the York Antwerp Rules, 1994, and as to matters not provided for in these rules according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. Average agreement and bond, together with such additional security as may be required by the Carrier, shall be furnished before delivery of the Goods. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract or otherwise, the Goods, and the Merchant jointly and severally shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or measured and shall pay salvage and special charges incurred in respect to the Goods. If a salving Vessel is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving Vessel and Vessels belong to strangers.
    In the event the Master considers that salvage services are needed, the Merchant agrees that the Master may act as his agent to procure such services for the Goods and that Carrier may act as his agent to settle salvage remuneration.

21. **BOTH TO BLAME COLLISION.**
    If the Vessel comes into collision with another Vessel as a result of the negligence of the other Vessel and any act, neglect or default of the master, mariner, pilot or the servants of the owner of the Vessel and in the navigation in the management of the Vessel, the Merchant hereby indemnify the Carrier against all loss or liability which might incur directly or indirectly to the other or non-carrying Vessel or her owners insofar as such liability represents loss of or damage to his Goods or any claim whatsoever of the Merchant paid or payable by the other or non-carrying Vessel or her owners to the Merchant and set-off recouped or recovered by the other or non-carrying Vessel or her owners as part of their claim against the carrying Vessel or the owner thereof. The foregoing provisions shall also apply where the owners, operators or those in charge of any Vessel or Vessels or objects other than, or in addition to, the colliding Vessels or objects are at fault in respect of a collision or contract.

22. **NOTICE OF CLAIM AND TIME FOR SUIT.**
    Unless notice of loss or damage and a general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods, or, if the loss or damage be not apparent, within three days after delivery, the Goods shall be deemed to have been delivered as described in this Bill of Lading. In any event, the Carrier shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered.

23. **LIMITATION OF LIABILITY.**
    (1) All claims which the Carrier may be liable for shall be adjusted and settled on the basis of the net invoice value of the Goods. In no event shall the Carrier be liable for any loss of profit or any consequential loss.
    (2) Subject to the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bill of Lading dated 25 August 1924, and any legislation making those rules compulsorily applicable to this Bill of Lading, including the Carriage of Goods by Sea Act of the United States of America, approved 16 April, 1936, the Carrier shall in no event be liable for any loss or damage to or in connection with the Goods in an amount exceeding the limit of U.S. Dollars $500 per package, or where the Goods are not shipped in packages per customary freight unit. If such limitation is inapplicable under local law, the applicable Hague Rules limitation amount in the country in which the action is brought shall be applied. If the shipment covered by this Bill of Lading originates in a country where the Hague Visby Amendments to the Hague Rules are mandatorily applicable, and if suit is brought in such jurisdiction, Carrier's liability shall not exceed 2 SDRs per kilo. If an action is brought in the Republic of China (Taiwan) for Goods originating or consigned to the Republic of China then Carrier's maximum liability shall be 9,000 NT Dollars per package.
    (3) The aforementioned limitations of liability set forth in this provision shall be applicable unless the nature and value of the Goods have been declared by the Merchant before shipment and agreed to by the Carrier, and are inserted in this Bill of Lading and the applicable "ad valorem" freight rate, as set out in Carrier's Tariff, is paid. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value and if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoiced value of the Goods plus freight and insurance.

24. **FIRE.**
    Neither the Carrier nor any Underlying Carrier or Sub-Contractor utilized by the Carrier in the performance of this Bill of Lading Contract shall be liable to answer for or make good any loss or damage to the Goods occurring at any time the Goods are considered to be in Carrier's custody including the period before loading, or after discharge from the Vessel, by reason of any fire unless such fire shall be caused by the actual fault or privity of the Carrier.

25. **LIEN.**
    The Carrier shall have a lien on the Goods, and any documents relating thereto, for all sums payable to the Carrier under this contract and for general average and salvage contributions to whomsoever owed for the costs of recovering same, and for any penalties and assessments charged to the Carrier as a result of its Carriage of the Goods. In order to recover for such charges the Carrier shall have the right to sell the Goods by public auction or private treaty without notice to the Merchant.

26. **LAW AND JURISDICTION.**
    Except as otherwise provided specifically herein any claim or dispute arising under this Bill of Lading shall be governed by the laws of England and determined in English courts sitting in the city of London to the exclusion of the jurisdiction of the courts of any other place. In the event this clause is inapplicable under local law then jurisdiction and choice of law shall lie in either the port of loading or port of discharge at Carrier's option.