```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
INDEMNITY INSURANCE COMPANY OF            07 Civ. 959 (RPP)
NORTH AMERICA,
                    Plaintiff,           07 Civ. 2562 (RPP)

         -against-                       07 Civ. 3104 (RPP)

C.U. TRANSPORT INC.; CHINA
UNITED TRANSPORT, INC.; JC TRANS
LOGISTICS, INC.; KAWASAKI KISEN
KAISHA LTD.; K-LINE; YANG MING
MARINE TRANSPORT CORP.; YANG
MING (AMERICA) CORPORATION; M/V
"EASLINE TIANJIN", her engines,
tackle, boilers, etc.,

                    Defendants.
------------------------------------X
```

**\* And Related Actions.**

**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION**

Garth S. Wolfson (GW 7700)

    Of Counsel

MAHONEY & KEANE, LLP
Attorneys for Defendant
KAWASAKI KISEN KAISHA LTD.
111 Broadway, Tenth Floor
New York, New York 10006
(212) 529-8162

TABLE OF CONTENTS

*Page*

REPLY ARGUMENT..................................................1

PRELIMINARY STATEMENT...........................................1

POINT I.    AS A MATTER OF CONTRACT AND OF LAW, NO AMBIGUITY IS CREATED BY VIRTUE OF ANY DIFFERENCES BETWEEN THE FORUM-SELECTION AGREEMENT CONTAINED IN THE BILL OF LADING AND THE FORUM-SELECTION AGREEMENT CONTAINED IN THE SERVICE CONTRACT, AND THE TERMS OF THE BILL OF LADING WOULD TAKE PRECEDENCE OVER THOSE OF THE SERVICE CONTRACT, IN ANY EVENT......2

POINT II.   THE FORUM-SELECTION CLAUSE IS NOT MERELY A PERMISSIVE, SOLEY JURISDICTION-CONFERRING AGREEMENT......................................7

POINT III.  K-LINE HAS NOT WAIVED VENUE DEFENSES..............9

POINT IV.   STRICTLY IN THE ALTERNATIVE, THE AMERICAN HOME AND TRAVELERS ACTIONS SHOULD BE STAYED PENDING ARBITRATION, AS THOSE PLAINTIFFS HAVE SUGGESTED......................................13

CONCLUSION......................................................14

<u>**REPLY ARGUMENT**</u>

**PRELIMINARY STATEMENT.**

Defendant KAWASAKI KISEN KAISHA, LTD. ("K-LINE"), also sued herein as K-LINE and "K" LINE, notes that the plaintiff in the INDEMNITY INSURANCE COMPANY OF NORTH AMERICA action, under Case Number 07 Civ. 959 (RPP), has not submitted any answering papers. The opposition submitted by plaintiffs AMERICAN HOME ASSURANCE COMPANY (AMERICAN HOME) and THE TRAVELERS (TRAVELERS), in the actions under Case Numbers 07 Civ. 2562 (RPP) and 07 Civ. 3104, respectively, are largely similar and are thus addressed collectively below. The Court should be aware that counsel for both of these plaintiffs have advised that suit has been timely brought in Japan with respect to these claims. It should also be noted that AMERICAN HOME's Memorandum of Law contains a statement of the underlying facts concerning the loss, which is not relevant to the forum-selection issue. For the record, K-LINE disputes AMERICAN HOME's rendition of the facts on the merits, though, again, it might be of some incidental interest to the Court to know that the loss occurred in East Asia, the very place where K-LINE seeks to see this case proceed as a matter of contract.

POINT I.	AS A MATTER OF CONTRACT AND OF LAW, NO AMBIGUITY IS CREATED BY VIRTUE OF ANY DIFFERENCES BETWEEN THE FORUM-SELECTION AGREEMENT CONTAINED IN THE BILL OF LADING AND THE FORUM-SELECTION AGREEMENT CONTAINED IN THE SERVICE CONTRACT, AND THE TERMS OF THE BILL OF LADING WOULD TAKE PRECEDENCE OVER THOSE OF THE SERVICE CONTRACT, IN ANY EVENT.

Both of the opposing plaintiffs are principally relying on service contracts, not previously disclosed in their discovery responses, which pre-date the bills of lading, and which call for mandatory arbitration, rather than suit in Japan. (Exhibit 1 to Radzik Affidavit; Exhibit C to Krauzlis Opposition).

But, as is readily apparent by even a cursory comparison of the two contracts, bills of lading and service agreements concern separate and distinct obligations. Service contract questions, regarding rates, commodities, service commitments and other purely commercial matters do not involve alleged cargo damage under individual contracts of carriage. There is no overlap here. Service contract disputes have nothing whatsoever to do with cargo losses arising under bills of lading.

The TRAVELERS plaintiff cites cases where the party holding the bill of lading was also the charterer of the vessel, a situation which is well-known to result in the bill of lading being deemed a "mere receipt." This is a well-established, pre-COGSA rule of maritime law arising from the peculiar aspects common to chartering arrangements, whereby the ship is effectively taken over by the charterer. "There is, in fact (to borrow a simile from another branch of the law), an estate carved out of the ship and handed over for a specified term to the Charterer,

and that estate consists of the capacity of the vessel for carrying freight and earning freight moneys, and the use of the vessel, Master and crew, for the advancement of the Charterers' gains." The Santana, 152 F. Supp. 516 (S.D.N.Y. 1970). Moreover, charter parties contain details of the voyage and the usual provisions contained in contracts of ocean carriage, such as bills of lading, that are completely absent from service contracts, which primarily concern rates to be charged over a period of time for certain trades at particular volumes. Service contracts can only be reasonably viewed as separate, ancillary agreements, not as superseding contracts of carriage which might turn a bill of lading into a mere receipt.

COGSA itself states that "[t]he provisions of this Act shall not apply to charter parties." 46 U.S.C. § 1305. It says no such thing about service contracts. Accordingly, in the absence of a charter party, the bill of lading is the governing contract under COGSA, and the parties to a shipment are bound by the bill of lading's provisions. See, Southern Pacific Transp. Co. v. Commercial Metals, 456 U.S. 336, 342-43 (1982) ("[E]ach [term] has in effect the force of statute of which all effected must take notice."); United Van Lines Inc. v. Hellman, 949 F. Supp. 126, 129 (E.D.N.Y. 1996) ("It is well-accepted that a bill of lading may not be modified by extrinsic or parol evidence.").

The only authority cited by plaintiff even arguably supporting its position that a service contract supersedes a bill

3

of lading is the case of Eastern Fish Co. v. South Pacific Shipping Co., 105 F. Supp. 2d 234 (S.D.N.Y. 2000). But Eastern Fish was decided primarily on other grounds. That service contract specifically stated that its terms would govern over any inconsistent bill of lading provisions. Id. at 238. As discussed below, that is not the case here; the service contract in this case nowhere provides that it would control over bills of lading. The Eastern Fish court also based its holding on the fact, not present in this case, that a bill of lading had never actually been signed, executed, or issued, rendering it "unenforceable." Id. at 239.

The holding urged by the plaintiffs in this case would also run directly afoul of the several decisions which have clearly and unequivocally found that it is the bill of lading's forum-selection agreement which governs under these circumstances, not the service contract's. See, Calchem Corp. v. Activsea USA LLC, No. 06 Civ. 1585 (CPS), 2007 U.S. Dist. LEXIS 53904, *13, 2007 A.M.C. 1950 (E.D.N.Y. Jul. 25, 2007) ("[B]ecause the bill of lading was issued after the service contract, the bill of lading controls."); TMC Co., Ltd. v. M/V Mosel Bridge, 01 Civ. 7860 (LAK), 2002 U.S. Dist. LEXIS 14451 (LAK) (S.D.N.Y. Aug. 7, 2002) ("[T]he forum selection clause in the way bill, which postdated and is flatly inconsistent with that in the service contract, would have superseded the latter with respect to the cargo at issue.").

> By their terms, the service contracts govern only claims for breach of their pricing and shipping provisions. The service contracts do not extend to claims for cargo damage, nor do they modify the terms and conditions set forth in the Bills of Lading. The Bills of Lading are the applicable contracts of carriage governing liability for cargo damage, and the service contracts' provisions for New York jurisdiction are therefore inapplicable to the present case.

Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd., 462 F. Supp. 2d 1098, 1105 (C.D. Cal. 2006).

Accordingly, both the bill of lading and the service contract contain integration clauses confirming that each represented the sole agreement between the parties with respect to "the subject matter" addressed in each. See, Exhibit J to Wolfson Declaration, at ¶¶2.1-3.1; Exhibit K to Wolfson Declaration, at ¶ 30; Exhibit B to Krauzlis Opposition, at ¶ 1; Exhibit C to Krauzlis Opposition, at ¶ 15. It was thus also fully consistent for the Waybill to state that "[t]his Waybill supersedes any prior arrangements, agreements or representations by Carrier, its agent or any other person, save for service contracts between the parties," since the bill of lading and the service contract concern different subject matters. This language just insures that no party attempts to assert that one or the other should be void; it does not speak to which should take precedence. Indeed, they should both remain viable, and no inconsistency can fairly be argued, inasmuch as only totally different claims would arise under each. As a matter of plain English, moreover, the "save for service contracts" language can not be fairly said to do anything more than preserve

the service contract, i.e. the rates and minimum quantity commitments which do not have anything to do with claims for cargo damage under the contract of carriage. It surely does not, as plaintiffs appear to suggest, purport to have the service contract trump or take precedence over the bill of lading with respect to cargo damage claims.

Moreover, other terms address that issue and unequivocally confirm that terms of the bill of lading control matters arising under the contract of carriage, rather than the rates, minimum quantities, and other commercial matters arising under the service contract. See, Exhibit B to Krauzlis Opposition, at ¶ 1; Exhibit J to Wolfson Declaration, at ¶ 2.1.

Indeed, plaintiffs appear to largely overlook the one clause of the service contract which does specifically address the particular issue at hand.

> SEA WAYBILL OF LADING PROVISIONS. All terms and conditions (front and back) of Carrier's applicable Bill of Lading form (Standard Form for Container Trades), as effective upon cargo receipt and as contained in Carrier's Tariff at the time of receipt, shall apply to all shipments hereunder, notwithstanding any term of this Contract.

See, Exhibit 1 to Radzik Affidavit, at ¶ VIII; accord, Exhibit C to Krauzlis Opposition. Whether or not the waybills expressly stated that the bill of lading's terms would apply over the service contract's, the service contract itself makes clear the preeminence of the bill of lading whenever it is applicable. Thus, even "sav[ing] for [the] Service Contract[]," and applying

6

the terms of the service contract to the contract of carriage, the service contract would still apply the terms of the waybills. There is, therefore, just no merit to plaintiffs' position.

Plaintiffs' argument is not novel; it has been dealt with before and rejected. Under the plain terms of agreements, the bill of lading controls as a matter of contract. Under the weight of the legal authority on the issue, the bill of lading also controls as a matter of law.

**POINT II.    THE FORUM-SELECTION CLAUSE IS NOT MERELY A PERMISSIVE, SOLEY JURISDICTION-CONFERRING AGREEMENT.**

The TRAVELERS plaintiff has presented the Court with the old canard that the word "shall" is not mandatory. To this end, TRAVELERS relies on the case of John Boutari and Son, Wines and Sprits, S.A. v. Attiki Importers and Distributors Inc., 22 F.3d 51 (2d Cir. 1994), which noted the difference between a clause simply requiring the parties to consent to the jurisdiction of a particular forum and a clause requiring any claims to be brought in that forum. Id. But the Clause before the Boutari court only provided that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the Greek Courts." Id. at 52. Contrary to TRAVELERS's suggestion, the Boutari court expressly ruled that the word "shall" is, in fact a mandatory term; the only problem was that the clause was addressed only to jurisdiction, rather than forum. Id. at 53 ("Although the word 'shall' is a mandatory term, here it mandates nothing more than that the Greek courts have jurisdiction.").

7

Indeed, the Second Circuit has repeatedly noted that clauses simply stating, without more, that disputes "shall" be heard in a particular forum are mandatory and binding. See, e.g., Continental Ins. Co. v. Polish S.S. Co., 346 F.3d 281, 284 n.3, 2003 A.M.C. 2718 (2d Cir. 2003) ("[S]uch a clause must be considered 'broad.'"); AVC Nederland B.V. v. Atrium Investment Partnership, 740 F.2d 148, 155 (2d Cir. 1984) ("The clause was indeed more than a jurisdiction-conferring clause."); see also, Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 1995 A.M.C. 1817 (1995).

And the very forum-selection language before the Court has specifically been found valid and fully enforceable by several United States courts. See, Regal-Beloit Corp. v. Kawaskai Kisen Kaisha, Ltd, 462 F. Supp. 2d 1098, 2007 A.M.C. 480 (C.D. Cal. 2006); TMC Co. v. M/V Mosel Bridge, No. 01 Civ. 7860 (LAK), 2002 U.S. Dist. LEXIS 14451 (S.D.N.Y. Aug. 7, 2000); Chiyoda Fire & Marine Ins. Co. of Am. v. M/V Hyundai Freedom, No. 97 Civ. 8474 (KMW), 1999 U.S. Dist. LEXIS 19993, 1999 A.M.C. 1603 (S.D.N.Y. Feb. 1, 1999); see also, American Home Assurance Co. v. M/V Jaami, No. 06 Civ. 287 (LBS), 2007 U.S. Dist. LEXIS 25864 (S.D.N.Y. Apr. 9, 2007) (same clause); Vigilant Ins. Co. v. Nippon Yusen Kaisha (NYK Line), 97 Civ. 7517 (DC), 1998 U.S. Dist. LEXIS 10491 (S.D.N.Y. Jul. 14, 1998) (same clause); Talatala v. Nippon Yusen Kaisha Corp., 974 F. Supp. 1321, 1997 A.M.C. 1398 (D. Haw. 1997) (same clause).

As previously discussed, the fact the COGSA applies or that jurisdiction might be available here or anywhere else is of no moment to the analysis. See, Abrar Surgery (PVT) Ltd. v. M.V. Jolly Oro, 1999 U.S. Dist. LEXIS 6768, **5-6, 2000 A.M.C. 109 (S.D.N.Y. 1999) ("Plaintiffs, who carry the burden of persuasion, have failed to establish that the substantive law to be applied will reduce the carrier's obligations to the cargo owner below what COGSA guarantees . . . Upon examination of the bill of lading, however, it appears likely that COGSA itself governs the rights and liabilities of both parties . . . and there is no indication from either party that [the foreign] court would not apply COGSA.").

**POINT III.     K-LINE HAS NOT WAIVED VENUE DEFENSES.**

A waiver is not to be lightly inferred; the party asserting that a waiver has occurred bears a heavy burden in showing that so much time has elapsed, substantive litigation has occurred, and prejudice would result that such a waiver finding is warranted. See, generally, Thyssen, Inc. v. Calypso Shipping Corp., 310 F.3d 102, 106 (2d Cir. 2002); PPG Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103 (2d Cir. 1997); Com-Tech Assoc's v. Computer Assoc's Int'l Inc., 938 F.2d 1574 (2d Cir. 1991); Rush v. Oppenheimer & Co., 779 F.2d 885 (2d Cir. 1985).

"Courts have found implied waiver of venue where a party has repeatedly represented that venue is appropriate or actively pursued substantive motions. In contrast, no waiver has been

9

found where parties merely participated in pretrial motions, moved to dismiss after discovery has been completed, or where the opposing party was not prejudiced by dismissal." Ferraro Foods, Inc. v. M/V Izzet Incekara, 2001 U.S. Dist. LEXIS 12338, at *13, 2001 A.M.C. 2940 (S.D.N.Y. 2001) (citations omitted). "'Merely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver.'" Cargill B.V. v. S/S Ocean Traveler, 726 F. Supp. 56, 1989 A.M.C. 953, 956 (S.D.N.Y. 1989) (quoting Demsey & Associates v. S.S. Sea Star, 461 F.2d 1009, 1018, 1972 A.M.C. 1440, 1452 (2d Cir. 1972)). "Having been sued in this forum, [defendants have] a right to defend themselves in the event the forum clause was not upheld without subjecting themselves to waiver." Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 455, 2002 A.M.C. 2377 (S.D.N.Y. 2002) ("They argue that by filing a cross-claim and a third-party complaint and waiting seven months after answering to file this motion to dismiss, the Hapag Defendants have availed themselves of the jurisdiction of this Court and therefore cannot rely on the forum selection clause. This contention fails to persuade.").

Where the forum selection clause is raised in a party's initial pleading, a claim of waiver is difficult to sustain. Eastern Fish Co. v. South Pacific Shipping Co., 105 F. Supp. 2d 234, 2001 A.M.C. 1176 (S.D.N.Y. 2000) ("Plaintiffs were on notice that Defendants might seek arbitration as soon as Defendants

raised the arbitration issue in their answer.") (citing cases); <u>LPR, SRL v. Challenger Overseas, LLC</u>, 2000 U.S. Dist. LEXIS 9746, at **20-21, 2000 A.M.C. 2887 (S.D.N.Y. 2000) ("Challenger's answer raised as an affirmative defense that the dispute was governed by the terms of the Bill of Lading. The plaintiff had an incentive at that point to determine the appropriate forum. There is no basis to conclude that the plaintiff has been surprised that the forum selection clause requires its action to be brought in Italy."). A party which alleges improper venue in its answer can not be found to have waived the defense merely by participating in the litigation. <u>Tatala v. Nippon Yusen Kaisha Corp.</u>, 974 F. Supp. 1321, 1997 A.M.C. 1398, 1400 (D. Haw. 1997) ("The court therefore finds that NYK did not waive the defense of improper venue as it was asserted in ¶77 in the Answer."); <u>see also</u>, <u>Bison Pulp & Paper Ltd. v. M/V Pergamos</u>, 1995 U.S. Dist. LEXIS 22057, 1996 A.M.C. 2022, 2042 (S.D.N.Y. 1995) ("[T]he reported case law on the effect of such a provision has consistently held that such a letter of undertaking does not waive an otherwise applicable forum-selection clause.").

But, even absent an express reservation of rights in a party's answer, the courts are loath to conclude that participation in the litigation and delay in raising the issue can result in a waiver. <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.</u>, 88 F. Supp. 2d 168, 2000 A.M.C. 1923, 1936-37 (S.D.N.Y. 2000) (finding no waiver, despite failure to mention

alternate forum until after claim had been raised by party asserting the defense), amended, 94 F. Supp. 2d 474 (S.D.N.Y. 2000); Thyssen, Inc. v. Markos N, 1999 U.S. Dist. LEXIS 12578, 1999 A.M.C. 2515, 2526 (S.D.N.Y. 1999) (finding no waiver, despite failure to mention alternate forum until litigation had progressed for 20 months); China Union Lines v. American Marine Underwriters Inc., 458 F. Supp. 132, 136, 1978 A.M.C. 2595, 2600 (S.D.N.Y. 1978) (finding no waiver, despite failure to mention alternate until litigation had progressed for over one year); see also, Rogen v. Memry Corp., 886 F. Supp. 393, 396 (S.D.N.Y. 1995).

In the case at bar, the TRAVELERS plaintiff asserts that K-LINE waived the forum-selection agreement by including a protective indemnity claim in its answer. As the cases above demonstrate, the doctrine of waiver was not designed to create the "Catch-22" situation TRAVELERS is trying to have imposed.

And, in fact, TRAVELERS amended its complaint after K-LINE's motion was filed, and K-LINE's Answer to the Second Amended Complaint does not contain any cross-claim.

But, in any event, even K-LINE'S original Answer reiterates multiple venue-related affirmative defenses, (Exhibit F to Wolfson Declaration, at ¶¶ 18-19), and specifically alleges that "[t]he terms and conditions of the bill of lading, tariff and/or other governing contracts between the parties require that this matter be heard in a forum other than this Court." Id. at ¶ 20. It further expressly states that "[t]his Answer and Cross-Claim is

made without waiver of any jurisdictional defenses or rights to arbitrate that may exist." Id. at ¶ 24.

At the very first Court conference at which K-LINE appeared, the undersigned took pains to advise the Court that this very motion would follow, and a briefing schedule was entered before K-LINE was even served with the TRAVLERS complaint. It simply stretches credulity, as well as all fairness, to accept that any waiver can be established on these facts.

**POINT IV.   STRICTLY IN THE ALTERNATIVE, THE AMERICAN HOME AND TRAVELERS ACTIONS SHOULD BE STAYED PENDING ARBITRATION, AS THOSE PLAINTIFFS HAVE SUGGESTED.**

Both of the opposing plaintiffs have asserted that the arbitration provisions contained in the service contracts should govern, rather than those of the bills of lading pursuant to which plaintiffs have brought suit against K-LINE. Should the Court be inclined to accept plaintiffs' argument in this regard, then the claims against K-LIONE should still be dismissed or stayed pending arbitration, accordingly.

CONCLUSION.

WHEREFORE, K-LINE urges the Court to grant the instant motion for an order, dismissing the claims against K-LINE and granting to K-LINE such other and further relief as this Honorable Court may deem just and proper.

Dated: New York, New York
       November 15, 2007

>                              Respectfully submitted,
>
>                              MAHONEY & KEANE, LLP
>                              Attorneys for Defendant
>                              KAWASAKI KISEN KAISHA, LTD.
>
>                         By:  _____
>                              Garth S. Wolfson (GW 7700)
>                              111 Broadway, Tenth Floor
>                              New York, New York  10006
>                              (212) 385-1422